Erwin J. Shustak (CA Bar No. 119152)
shustak@shufirm.com
Jonah A. Toleno (CA Bar No. 209600)
jtoleno@shufirm.com
Katherine S. DiDonato (CA Bar No. 272704)
kdidonato@shufirm.com
SHUSTAK REYNOLDS & PARTNERS, P.C.
401 West "A" Street, Suite 2250
San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290

*Attorneys for Plaintiff David J. Hughes*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID J. HUGHES, an individual, | Case No. **'16CV1856 DMS KSC** |
| Plaintiff, | **COMPLAINT FOR** |
| v. | 1. **Declaratory Relief Under 18 U.S.C. § 1030,** *et seq.* |
| KESTRA PRIVATE WEALTH SERVICES, LLC, f/k/a NFP ADVISOR SERVICES, LLC, f/k/a NATIONAL FINANCIAL PARTNERS CORPORATION, f/k/a WASHINGTON WEALTH MANAGEMENT, LLC, a Delaware limited liability company, and KESTRA INVESTMENT SERVICES, LLC, a Texas limited liability company, | 2. **Breach of Contract** 3. **Breach of Implied Covenant of Good Faith and Fair Dealing** 4. **Fraud in the Inducement** 5. **Negligent Misrepresentation** **DEMAND FOR JURY** |
| Defendants. | |

## INTRODUCTION

1.     This action seeks (a) a declaratory judgment that Defendant KESTRA PRIVATE WEALTH SERVICES, LLC, ("KPWS"), f/k/a NFP ADVISOR SERVICES, LLC ("NFPAS") and NATIONAL FINANCIAL PARTNERS CORPORATION ("NFP CORP") (collectively "NFP"), f/k/a WASHINGTON

WEALTH MANAGEMENT, LLC ("WWM"), and their alter ego, Defendant KESTRA INVESTMENT SERVICES, LLC ("KIS"), cannot obtain preliminary injunctive or other relief against Plaintiff DAVID J. HUGHES ("Plaintiff") arising out of his voluntary departure from his former employer based on claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; (b) compensatory damages in an amount to be proven at trial, pre-judgment interest, post-judgment interest, and attorney's fees and costs, for Defendants' misconduct as described herein and in Plaintiff's Claims for Relief; and (c) any and all other relief as this court deems just and proper.

2.      Plaintiff is an investment advisor licensed as a broker under the Financial Industry Regulatory Authority (FINRA) and is registered with the Securities Exchange Commission (SEC). He was, until very recently, an independent contractor of KPWS.

3.      Plaintiff resigned voluntarily from KPWS on July 21, 2016, and is transitioning his securities license registrations to another investment advisory firm, NBC Securities Advisor Services Group ("NBCS").

4.      As explained more fully herein, Plaintiff alleges KPWS and its predecessor WWM made false representations to Plaintiff to induce him to leave his prior firm and join WWM. Thereafter, KPWS and its predecessors WWM and NFP breached their obligations to Plaintiff. As a result of KPWS' breaches, through its acts and the acts of its predecessors, WWM's and NFP, Plaintiff has suffered damages in an amount to be determined at trial.

5.      Plaintiff has not taken any unauthorized clients or client information from KPWS' databases or computers. As such, Plaintiff is entitled to (a) a declaration that KPWS is not entitled to preliminary injunctive or other relief against him, under the Computer Fraud Abuse Act or under any state law claims, (b) compensatory damages in an amount to be proven at trial, pre-judgment interest, attorney's fees and costs, and (c) any and all other relief as this court deems just and proper.

**THE PARTIES**

6.    Plaintiff is a registered investment advisor. He is also registered with FINRA and has been granted Series 7, 31, 63 and 65 licenses. He first became affiliated with KWPS predecessor, WWM, and was an independent contractor for KWPS from June 2015, to July 21, 2016, when he voluntarily resigned. He is in the process of transitioning his securities license registration to NBCS. He is over the age of eighteen and resides in California.

7.    Defendant KPWS is a registered investment advisory firm incorporated in Delaware with its headquarters and principal place of business in Chicago, Illinois. At all materially relevant times, KPWS and its predecessors NFP and WWM operated and regularly conducted business in San Diego, California. KPWS continues to operate and regularly conduct business in San Diego, California.

8.    Defendant KIS is a registered broker-dealer with its headquarters, principal place of business and incorporation in Austin, Texas. At all materially relevant times, KIS operated and regularly conducted business in San Diego, California. KIS continues to operate and regularly conduct business in San Diego, California. Plaintiff is informed and believes thereon that KIS is the alter ego of KPWS. Each Defendant was and is a controlling person, agent and/or alter ego of each other Defendant. In so doing the acts as herein alleged, was acting within the course and scope of their agency and authority and with the express and implied permission, instruction, knowledge, consent and ratification of each other Defendant. Each Defendant influenced and governed the other with such a degree of unity of interest and ownership such that the individuality, or separateness, of each has ceased to exist. The facts hereafter are such that an adherence to the fiction of the separate existence of Defendants would sanction a fraud or promote a miscarriage of justice. Specifically, each Defendant acted at all times as the authorized agent and representative of the other Defendant. All Defendants, therefore, are jointly and severally liable for all damages assessed against them.

**JURISDICTION AND VENUE**

9.     The court has jurisdiction over this matter under 28 U.S.C. § 1331. Plaintiffs' claim for declaratory relief arises, in part, under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, as Plaintiff seeks a declaration that he did not violate that statute and that KWPS has no claim against Plaintiffs under that statute and cannot obtain temporary injunctive relief, permanent injunctive relief or other relief against him on that basis.

10.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because Plaintiff signed the operative contracts at issue in San Diego County, California, Defendants regularly conduct business through offices in the district, and a substantial portion of the events and/or omissions giving rise to his claims occurred in this district.

**FACTUAL BACKGROUND**

*WWM's Misrepresentations to Plaintiff in Recruitment*

11.     Plaintiff was, until July 21, 2016, an independent contractor associated with KPWS. He is in the business of providing clients with financial advice with a focus on annuity and syndicate investments. He has been licensed with FINRA in the securities business since 1994 and continuously has maintained a spotless publicly viewable record since then.

12.     KPWS, through its representative and agent, third party Scott Wilson (KPWS' Chief Operating Officer), recruited Plaintiff from approximately April to June 2015 to join its predecessor entity WWM as a financial advisor. During the recruitment process, KPWS, through Wilson and others including KIS LLC CEO Robert Bartenstein, made various false representations to Plaintiff to induce him to leave his former employer, Wells Fargo Advisors, LLC ("WFA"), and join WWM.

13.     Among these false representations were the following:

      a. WWM would provide channels for Plaintiff to conduct his successful syndicate investment business, including providing him a viable

connection with a syndicate product provider, and would support the growth of his business;

b. WWM would provide a working system whereby ticket charges would be passed on directly to the client and Plaintiff would not have to absorb certain costs incurred in executing "Unit Trust" transactions; and

c. WWM would provide an adequate platform for transacting annuity business.

14. WWM, through Wilson, Bartenstein and others, made these representations orally, in person, intentionally, willfully, and recklessly to Plaintiff with the intent to induce him to leave his successful practice at WFA and join WWM.

15. In addition, in May 2015, WWM, through Wilson, Bartenstein and others, represented orally and in writing to Plaintiff that he would receive a 63% payout on brokerage business gross revenues from his client accounts. They also discussed projected real estate (office space) usage by Plaintiff. While Plaintiff's business model did not require a separate WWM office space, WWM's agents convinced him to take space at the office as part of its compensation structure.

16. Plaintiff agreed to take the space in justifiable reliance on the explicitly agreed-upon condition that, when the parties revisited the issue at his one-year affiliation anniversary, if he relinquished the office space, WWM would consider raising his payout percentage. Plaintiff signed a letter drafted by WWM agreeing to the foregoing on May 20, 2015, although the letter was dated May 15, 2015 (the "May 15, 2015 Agreement").

17. Throughout the recruitment process and later, during his affiliation with KPWS, KPWS, through Wilson, Bartenstein and others, also made repeated oral and written representations to Plaintiff that any and all client accounts he originated before or after joining WWM (and later, NFP / KPWS) would remain Plaintiff's

accounts upon termination of his relationship with WWM/NFP/KPWS, so long as the clients are not prevented from choosing to discontinue Plaintiff's advisory services.

***Defendants' Failure to Carry Out Promises to Plaintiff***

18.   In justifiable reliance on WWM's representations, Plaintiff joined WWM on June 4, 2015. At the time, NFP was WWM's parent company. KPWS acquired NFP, f/k/a WWM, in 2015.

19.   It became apparent to Plaintiff after transitioning his practice that Defendants did not intend to execute the promises made to him during the recruitment process. For instance, WWM did not provide Plaintiff with a competent "transition team" nor did it take steps to ensure a timely, smooth transition of his clients. In fact, it took Plaintiff nearly four months, an exceedingly long time in the securities industry, to onboard his clients' accounts at WWM. Plaintiff and his staff incurred a multitude of excess hours of their own time to complete the unnecessarily burdensome transition.

20.   In addition, WWM failed to provide Plaintiff with a platform or any viable channels for him to manage, pursue, and develop his syndicate product business, despite knowing it comprised 30% of his practice. Plaintiff later learned, after joining WWM, that WWM did not have any interest in cultivating his syndicate business, causing damage to his revenues and potential revenues. WWM also caused Plaintiff damages according to proof by failing to provide him with an adequate mechanism by which to conduct his annuities business, causing him unjustified delays in ticket processing, which led to customer dissatisfaction and excess fees which Plaintiff was forced to incur unnecessarily.

21.   In or around late May 2016, in anticipation of his one-year anniversary with KPWS, Plaintiff requested an in-person meeting with Wilson and Bartenstein primarily to revisit the issue of raising his payout percentage in exchange for relinquishing the company office space. Upon contemplation following his transition,

Plaintiff decided his business model did not require the space and he was prepared to give it up in exchange for a higher payout, as had been represented to him.

22.     Plaintiff and his wife met in person with Wilson and Bartenstein on June 15, 2016. When Plaintiff raised the prospect of relinquishing the office space in exchange for the increased payout, Wilson and Bartenstein informed him KPWS would not entertain the prospect until certain other conditions were met, which was contrary to KPWS' prior oral and written representations.

23.     When Plaintiff questioned this, Wilson informed him, "I didn't know what I was signing" and informed Plaintiff he (Wilson) did not understand what the written provisions in the May 15, 2015 Agreement. It became immediately apparent to Plaintiff that KPWS did not intend to carry out its obligations under the May 15, 2015 Agreement, so Plaintiff ended the meeting. Had Plaintiff known that KPWS would renege on its agreement to consider raising his payout after trading in the office space, he never would have agreed to take the office space and would have negotiated a higher payout at the outset. As a result of KPWS' conduct, Plaintiff estimates he has suffered damages in an amount according to proof, but no less than $600,000.

24.     Following the meeting, and after unsuccessfully attempting in good faith to resolve these multiple issues with management, Plaintiff voluntarily terminated his independent contractor relationship with KPWS on July 21, 2016.

25.     Upon his termination with KPWS, Plaintiff did not take any unauthorized clients or client information, or any trade secrets, with him, nor did he take any steps to preclude any clients from choosing to discontinue his services.

### FIRST CLAIM FOR RELIEF

### (For Declaratory Judgment)

### Against All Defendants

26.     Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

27.     An actual controversy exists between Plaintiff and KPWS. Plaintiff contends that his actions in resigning from KPWS and taking authorized clients and client information did not violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, misappropriate KPWS's trade secrets, breach any enforceable provision of any agreements with KPWS, or otherwise give rise to any claim that would entitle KPWS to obtain preliminary injunctive or other relief against him.

28.     Therefore, Plaintiff seeks a declaration that:

    a.  Plaintiff's actions did not violate the Computer Fraud and Abuse Act;

    b.  Plaintiff has not misappropriated any protectable KPWS trade secrets;

    c.  Plaintiff has not breached any enforceable provision of his agreements with KPWS and that any provisions of any agreements KPWS may rely upon to try to prevent Plaintiff from taking or using any client information he took with him upon departing from KWPS, are invalid;

    d.  KPWS has no claim against Plaintiff arising out of his departure;

    e.  Plaintiff was and is entitled to take all clients and client information he took with him upon his departure, with no claim by KPWS for taking such clients and client information;

    f.  KPWS is not entitled to a temporary restraining order, a preliminary injunction, or other relief arising out of Plaintiff's departure.

29.     Plaintiff believes an actual controversy exists concerning the foregoing in light of KPWS' failure to execute its obligations and promises in connection with his recruitment and affiliation with KPWS and its predecessors.

///

///

///

///

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

### Against All Defendants

30.    Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

31.    Defendants owed, and owe, Plaintiff several duties under written and oral agreements between the parties, including but not limited to the duty to reasonably consider raising Plaintiff's payout percentage in exchange for relinquishing office space funding, to provide a platform for smooth transition of Plaintiff's clients, to support Plaintiff's business and particularly his annuities and syndicate product business, to ensure Plaintiff did not incur unnecessary transaction costs and fees, and to ensure Plaintiff was equipped to adequately support his clients.

32.    KPWS and its predecessors breached these and other duties to Plaintiff under their agreements.

33.    As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to compensatory damages in an amount according to proof at trial.

## THIRD CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

### Against All Defendants

34.    Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

35.    Defendants owed, and owe, Plaintiff a duty of good faith and fair dealing pursuant to their written and oral agreements. The conduct described herein constitutes a breach of that duty by Defendants.

36.    As a direct and proximate result of Defendants' breach, Plaintiff is entitled to compensatory damages in an amount according to proof at trial.

///

///

**FOURTH CLAIM FOR RELIEF**

**(Fraud in the Inducement)**

**Against All Defendants**

37.     Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

38.     Defendants' conduct as described specifically herein, in making false representations to induce Plaintiff to join Defendants' firm, together with Plaintiff's justifiable reliance on such representations, constitutes fraud in the inducement. Defendants made these representations knowing they were false and with the intent to defraud Plaintiff.

39.     As a result of Defendants' conduct, Plaintiff is entitled to compensatory damages in an amount according to proof at trial. Defendants' conduct was willful, wanton, intentional and reckless, thereby entitling Plaintiff to punitive damages.

**FIFTH CLAIM FOR RELIEF**

**(Negligent Misrepresentation)**

**Against All Defendants**

40.     Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

41.     Defendants' conduct as described specifically herein, in negligently and carelessly making false representations to induce Plaintiff to join Defendants' firm, together with Plaintiff's justifiable reliance on such representations, constitutes negligent misrepresentation.

42.     As a result of Defendants' conduct, Plaintiff is entitled to compensatory damages in an amount according to proof at trial.

**DEMAND FOR JURY**

Plaintiff demands a jury trial on all causes of action for which he is entitled to a jury.

///

# PRAYER FOR RELIEF

Plaintiff therefore prays for relief as follows:

1. For a declaratory judgment that:

   a. Plaintiff's actions did not violate the Computer Fraud and Abuse Act;

   b. Plaintiff has not misappropriated any protectable KPWS trade secret;

   c. Plaintiff has not breached any enforceable provision of any Agreements with KPWS and that any provisions of those agreements KPWS may rely upon to try to prevent Plaintiff from taking or using any client information he took with him upon departing from KWPS, are invalid;

   d. KPWS has no claim against Plaintiff arising out of Plaintiff's departure;

   e. Plaintiff was and is entitled to take all clients and client information he took with him upon his departure, with no claim by KPWS for taking such clients and client information;

   f. KPWS is not entitled to a temporary restraining order, preliminary injunction, or other relief arising out of Plaintiff's departure.

2. For compensatory damages in an amount according to proof upwards of $600,000, and applicable interest;

3. For pre-judgment interest and post-judgment interest at the statutory rate;

4. For punitive damages in an amount to be determined at trial;

5. For attorney's fees and costs of suit; and

6. For such other relief as the court considers just and proper.

///
///
///
///

DATED:  July 21, 2016

Submitted by,

SHUSTAK REYNOLDS & PARTNERS, P.C.
ERWIN J. SHUSTAK, ESQ.
JONAH A. TOLENO, ESQ.
KATHERINE S. DIDONATO, ESQ.

s/ Jonah A. Toleno, Esq.
Email: jtoleno@shufirm.com

401 West "A" Street, Suite 2250
San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290

*Attorneys for Plaintiff David J. Hughes*

COMPLAINT